ANTHONY ALEXIS, DC Bar #384545
Email: anthony.alexis@cfpb.gov
Phone: (202) 435-7999
LUCY E. MORRIS, WA Bar #16510
Email: lucy.morris@cfpb.gov
Phone: (202) 435-7154
CARA PETERSEN, DC Bar #476990
Email: cara.petersen@cfpb.gov
Phone: (202) 435-7493
ERIN MARY KELLY, DC Bar #479413
Email: Erin.Kelly@cfpb.gov
Phone: (202) 435-7367
CRYSTAL R. SUMNER, CA Bar #261435
Email: crystal.sumner@cfpb.gov
Phone: (415) 633-1329
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7329

Attorneys for Plaintiff
Consumer Financial Protection Bureau

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau, <br><br> Plaintiff, <br><br> v. <br><br> Global Client Solutions, LLC, an Oklahoma limited liability company; <br><br> Global Holdings LLC, an Oklahoma limited liability company; <br><br> Robert Merrick, an individual; and <br><br> Michael Hendrix, an individual; <br><br> Defendants. | Case No. 2:14-cv-06643-DDP-JPR <br> _____ <br><br><br><br> **STIPULATED FINAL JUDGMENT AND CONSENT ORDER** |

1

The Consumer Financial Protection Bureau ("Bureau") commenced this civil action to obtain injunctive and monetary relief and civil penalties, from Global Client Solutions, LLC, Global Holdings LLC, Robert Merrick, and Michael Hendrix (collectively, "Defendants"). The Complaint alleges violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. pt. 310, and sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a).

The Parties, by and through respective counsel, agree to the entry of this Stipulated Final Judgment and Consent Order ("Consent Order"). Defendants waive: service of the Complaint and Summonses; any right to seek judicial review or to otherwise challenge or contest the validity of this Consent Order; and any right that may arise in this case under the Equal Access to Justice Act, 28 U.S.C. § 2412.

The Parties having requested the entry of this Consent Order, it is therefore ORDERED, ADJUDGED, and DECREED as follows:

## FINDINGS AND CONCLUSIONS

1.     The Bureau is an agency of the United States. 12 U.S.C. § 5491(a). It has independent litigating authority, 12 U.S.C. § 5564(a)-(b), including the authority to enforce the TSR as it applies to persons subject to the CFPA, 12 U.S.C. § 5531(a); 15 U.S.C. §§ 6102(c)(2), 6105(d).

2.     Defendant Global Client Solutions, LLC ("GCS") is a limited liability company organized under the laws of Oklahoma and is wholly-owned by defendant Global Holdings LLC ("Global Holdings") (collectively, "Global").

3.     Global offers and provides Payment Processing and Account Maintenance Services for consumers who have contracted with Debt Relief Service Providers. These services are consumer financial services under the CFPA. 12 U.S.C. § 5481(5), (15)(A)(iv), (15)(A)(vii), (15)(A)(viii)(II). Global is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

4.     Defendant Robert Merrick co-founded GCS and is the chairman of the board of directors of Global Holdings. Merrick has managerial responsibility for Global and materially participates in the conduct of its affairs. Merrick is therefore a "related person" under the CFPA, 12 U.S.C. § 5481 (25)(C)(i)-(ii), and deemed a "covered person."  12 U.S.C. § 5481(25)(B).

5.     Defendant Michael Hendrix co-founded and is the Chief Executive Officer of GCS. Hendrix has managerial responsibility for Global and materially participates in the conduct of its affairs. Hendrix is therefore a "related person" under the CFPA, 12 U.S.C. § 5481 (25)(C)(i)-(ii), and deemed a "covered person."  12 U.S.C. § 5481(25)(B).

6.     This Court has subject-matter jurisdiction because this action is brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

7.     Venue is proper in this district because a substantial amount of the transactions, acts, practices, and courses of conduct allegedly constituting violations of Federal consumer financial law occurred within this district. 28 U.S.C. § 1391(b)(2); 12 U.S.C. § 5564(f).

8.     The Complaint states claims upon which relief can be granted for Defendants' alleged violations of the TSR's assisting-and-facilitating provision, 16 C.F.R. § 310.3(b), and sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

9.     Since October 27, 2010, Debt Settlement Relief Providers charged consumers tens of millions in alleged unlawful advance fees in transactions in which GCS acted as a third-party account administrator and payment processor.

10.     The Bureau and Defendants agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date this Order is entered (the "Effective

Date"). Defendants do not admit or deny any of the allegations in the Complaint or this Consent Order. However, for the purposes of this Consent Order, Defendants admit the facts necessary to establish the Bureau's jurisdiction over Defendants and the subject matter of this action.

11. The terms and provisions of this Consent Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

12. Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions shall apply to this Consent Order:

13. "**Account Maintenance Services**" means holding or maintaining an account on behalf of any Person, or providing a Person, directly or indirectly, with the means to manage, track, or create reports on an account, whether accomplished through the use of software or otherwise.

14. "**ACH Debit**" means any completed or attempted debit to a Person's account at a financial institution that is processed electronically through the Automated Clearing House Network.

15. "**Advance Fee**" means any fee or consideration requested or received by a Debt Relief Service Provider from a Consumer for any Debt Relief Service, whether directly or indirectly, that occurs before:

    a. the Debt Relief Service Provider has renegotiated, settled, reduced, or otherwise altered the terms of a debt pursuant to a settlement agreement, debt management plan, or other valid contractual agreement executed by the Consumer; and

    b. the Consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the Consumer and the creditor or debt collector.

16.    "**Affected Consumer**" means any Consumer who has paid an Advance Fee to a Debt Relief Service Provider claiming an unlawful exemption from the Telemarketing Sales Rule that was processed by Defendants on or after October 27, 2010.

17.    "**Consumer**" means an individual or an agent, trustee, or representative acting on behalf of an individual.

18.    "**Debt Relief Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a Consumer and one or more creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

19.    "**Debt Relief Service Provider**" or "**DRSP**" means any Person that offers or provides any Debt Relief Service.

20.    "**Enforcement Director**" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegee.

21.    "**Face-to-Face Transaction**" means telephone calls in which the sale of goods or services is not completed, and payment or authorization of payment is not required, until after a face-to-face sales presentation by the seller.

22.    "**Payment Processing**" means providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment mechanism, including, but not limited to, ACH Debits.  Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things: (a) reviewing and approving applications of DRSPs to be customers of Global or other Persons' applications for Payment Processing or Account Maintenance Services; (b) providing the means to transmit Consumer payment transaction data to acquiring banks and/or other financial institutions; (c) clearing, settling, or distributing Consumer

payments from acquiring banks or financial institutions to DRSPs or other Persons; or (d) processing returned payments via any mechanism.

23.  "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

24.  "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against any of the Defendants based on substantially the same facts as alleged in the Complaint.

25.  "**Telemarketing"** means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

26.  "**Total Return Rate**" means the proportion (expressed as a percentage) of all attempted ACH debit transactions that are returned for any reason, whether before or after payment, out of the total number of such attempted transactions.

27.    "**Unauthorized Return Rate**" means the proportion (expressed as a percentage) of all attempted ACH debit transactions that are returned as unauthorized, whether before or after payment, out of the total number of such attempted transactions.

## CONSENT ORDER

**A.    Injunction Against Processing Advance Fees or Otherwise Providing Substantial Assistance in Violation of the TSR**

28.    **IT IS THEREFORE ORDERED** that Defendants, their officers, agents, servants, employees, and all persons who are in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are permanently restrained and enjoined from providing substantial assistance or support to any Person, including by providing Account Maintenance Services or Payment Processing, when Defendants know or consciously avoid knowing that the Person is requesting or receiving unlawful Advance Fees or is engaged in any other act or practice that violates the TSR, including but not limited to, when such Person is claiming to be exempt from the TSR based on an exemption not recognized in the TSR (e.g. "legal" exemption).

**B.    Reasonable Screening of Current and Prospective DRSP Clients**

29.    **IT IS FURTHER ORDERED** that Defendants, their officers, agents, servants, employees, and all persons who are in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are permanently restrained and enjoined from providing Payment Processing or Account Maintenance Services to any DRSP unless and until Defendants have conducted a reasonable screening of the DRSP to determine that the DRSP: (1) is complying with  the TSR, 16 CFR pt. 310; and (2) is complying with sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531 and 5536. Such reasonable screening shall include but not be limited to:

a. Obtaining from each current and prospective DRSP, including all principal(s) and controlling person(s) of the entity who own 10% or more of the ownership interests in the DRSP, either directly or indirectly:

    i. A description of the nature of the business, including describing all services for which the DRSP seeks Payment Processing or Account Maintenance Services for its customers;

    ii. A form which requests the DRSP to list all business and trade names, fictitious names, DBAs, and Internet websites under or through which the DRSP has marketed or intends to market the services for which the DRSP seeks Payment Processing or Account Maintenance Services for its customers;

    iii. The name and address of every bank and Payment Processor used by the DRSP during the preceding one year;

    iv. The names of business or trade references and bank references;

    v. The DRSP's past Total Return Rates, if applicable;

    vi. Representative examples of all DRSP marketing materials currently in use;

    vii. All current consumer contract templates being used for Debt Relief Service;

    viii. A summary description of the DRSP's complaint intake and management system;

    ix. All complaints, up to a maximum of 200 of the most current complaints, by or on behalf of any consumer about a DRSP and received by the DRSP in the preceding year and information relating to the resolution, if any, of such complaints. For DRSPs exceeding 200 complaints in the preceding year, after review of the 200 most current complaints, the volume of corresponding

complaints that were resolved, the volume of complaints outstanding (or resolution pending) and the number of complaints that were resolved with refunds to consumers;

   x. Information regarding whether the DRSP, including the principal(s) and controlling person(s) of the entity with 10% or more ownership interest in the entity, has ever been the subject of an investigation or the subject of any legal action by any state or federal law enforcement agency.

b. For a DRSP claiming it is not subject to the TSR because its business practices do not involve Telemarketing or for any other reason, such reasonable screening shall also include, but not be limited to, obtaining:

   i. A detailed description of why the DRSP contends its acts or practices do not constitute Telemarketing;

   ii. A detailed description of any aspects of the DRSP's business practices that involve the telephone;

   iii. A list of each physical address at which the DRSP and all Persons employed or engaged by the DRSP to make calls to or receive calls from consumers are conducting or will conduct business, including all physical addresses for making calls to or receiving calls from consumers, to determine whether the DRSP is processing Advance Fees for consumers in multiple states;

   iv. A list of all inbound and outbound telephone numbers used by the DRSP;

   v. Representative samples of catalogs and related communications provided to Consumers; and

   vi. Names of any attorneys claiming to provide any Debt Relief Service or any other service related to or through the DRSP; the

states in which they are licensed to practice law; and any non-confidential information about state bar complaints or disciplinary proceedings against those attorneys.

c. For a DRSP claiming it is exempt from the TSR because its business practices involve only Face-to-Face Transactions, such reasonable screening shall also include obtaining:

   i. A detailed description of why the DRSP contends its acts or practices qualify as Face-to-Face Transactions;

   ii. A detailed description of how the DRSP conducts meetings with consumers which includes information as to whether the DRSP uses employees or independent contractors to conduct face-to-face sales presentations;

   iii. For DRSPs which use independent contractors, a list of all independent contractors and current contract templates with the independent contractors hired to conduct face-to-face meetings with consumers;

   iv. All information and materials relating to the content, length, location, and other circumstances surrounding the face-to-face presentations;

   v. Representative examples of the  materials relating to the training of DRSP representatives, whether employees or independent contractors, meeting face-to-face with consumers to provide the sales presentations, including training materials, scripts, guidance documents, or other similar materials; and

   vi. All materials provided to Consumers prior to signing a Debt Relief Service contract.

d.  Taking reasonable steps to assess the accuracy of the information provided pursuant to requirements of Paragraph 29.a through 29.c, including:

    i.  Contacting consumers and financial institutions, if applicable, to gather detailed information, including complaints and other relevant information, about the DRSP;

    ii.  Reviewing and investigating Consumer complaints, if applicable, about a DRSP;

    iii.  Searching publically available sources for legal actions taken by the Bureau or other federal or state law enforcement agencies against the DRSP or its principals;

    iv.  Reviewing the DRSP's websites from an IP address that is not associated with the Defendants;

    v.  Investigating the accuracy of any DRSP's claim that its business practices involve only Face-to-Face Transactions by reviewing and evaluating the information provided under Paragraphs 29.a through 29.c, considering any law enforcement actions against the company, interviewing consumers, or taking other such investigatory steps;

    vi.  Investigating the accuracy of any DRSP's claim that it is not subject to the TSR because its business practices do not involve Telemarketing, *e.g.,* because they do not involve more than one interstate telephone call or involve catalog solicitations, by reviewing and evaluating the information provided pursuant to Paragraphs 29.a through 29.c above, requesting historical consumer data to determine whether consumers in multiple states have signed up for the service, considering any law enforcement

actions against the company, auditing relevant DRSP employees or contractors, interviewing consumers, or taking other such investigatory steps.

30.     Defendant Global shall not provide Payment Processing or Account Maintenance Services for any DRSP unless Defendant Global has compiled written documentation establishing that Global has complied with all requirements under Paragraph 29 of this Order subject to the written plan submitted pursuant to Paragraph 31 as applicable.

31.     Within ten (10) days of the Effective Date, Global shall submit a written plan to the Enforcement Director, subject to a determination of non-objection, setting forth a specific timeline for completing the requirements of paragraphs 29 and 30 for DRSPs for which Global currently provides Payment Processing or Account Maintenance Services. Global shall complete the reasonable screening requirements in paragraphs 29 and 30 for these DRSPs as expeditiously as possible, and in no event shall Global take more than 120 days from the Effective Date to satisfy these requirements.

32.     Defendant Global shall not process any Advance Fee for any DRSP claiming that its business practices involve Face-to-Face Transactions, unless the DRSP provides evidence to Global that sale of services by the DRSP to the Consumer was not completed until after a face-to-face sales presentation by the DRSP. Such evidence shall include, at a minimum, the date, time, location, and attendees (including employer for the representative of the DRSP) at the face-to-face meeting giving rise to the claimed Face-to-Face Transaction.

33.     Defendants shall not process any Advance Fee for any DRSP claiming that it is not subject to the TSR on the basis that its business practices do not involve interstate telemarketing calls unless the DRSP demonstrates that the DRSP, directly or indirectly, makes all calls to and receives all calls from consumers located in the same state as the DRSP.  A DRSP that hires telemarketers in other states to conduct calls to induce the

purchase of Debt Relief Services within those states is still involved in a telemarketing plan, program, or campaign covered by the TSR.

**C.    Monitoring of Debt Relief Service Providers**

34.    **IT IS FURTHER ORDERED** that Defendants, their officers, agents, servants, employees, and attorneys, and all persons who are in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, shall continue to monitor each DRSP client pursuant to the reasonable screening requirements of paragraph 29 and the enhanced monitoring and due diligence procedures determined by the Third-Party Monitor to consider whether the DRSP is complying with the TSR. 16 CFR pt. 310, and sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531 and 5536.

35.    **Monitoring** shall include, but not be limited to:

a.    Semi-annual audits of each DRSP's (1) compliance with the TSR, 16 CFR pt. 310, and sections 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531 and 5536, and (2) if applicable, the accuracy of the DRSP's claim it is not subject to, or is exempt from, the TSR because its business practices do not involve Telemarketing, involve Face-to-Face Transactions, or fall under any other claimed exemption, by updating and taking steps to verify the truth and accuracy of information gathered pursuant to Paragraph 29 of this Consent Order;

b.    Reviewing and investigating complaints about DRSPs reported to Defendants;

c.    Calculating on a monthly basis for each DRSP the Unauthorized Return Rate. Such calculations must include all ACH transactions processed by Defendants since the commencement of the processing relationship with

such DRSP. For any DRSP with multiple processing accounts, the calculation of the Unauthorized Return Rate shall be made for each of the DRSP's individual processing accounts and in the aggregate;

d. Conducting a reasonable investigation for any DRSP whose Unauthorized Return Rate exceeds 0.5% as calculated under Paragraph 35.c of this Order or that has received the greater of (1) three complaints or (2) a number of complaints exceeding 0.2% of the total active clients for the DRSP during the six month evaluation period, in either case to the extent that such complaints are not resolved to the satisfaction of the consumer. Such reasonable investigation shall include:

i. During the investigation, suspending all Advance Fees or other payments to the DRSP under investigation until a determination is made that remedial efforts are required in order to continue operations with the DRSP, and continuing until such time as the DRSP has implemented the remedial efforts required; and

ii. Updating and taking steps to verify the truth and accuracy of information gathered pursuant to Paragraph 30 of this Consent Order.

At the completion of the investigation, Defendants shall not recommence payments to the DRSP under investigation (if payments to the DRSP were previously suspended under Paragraph 35.d.i) unless Defendants document facts that demonstrate that the DRSP has remediated.

**D.    Redress**

36.    A judgment for equitable monetary relief is hereby entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $6,099,000.

37.    Defendants shall pay to the Bureau, in the form of a wire transfer to the Bureau or to such agent as the Bureau may direct, and in accordance with wiring

instructions to be provided by counsel for the Bureau, $6,099,000 in full satisfaction of the judgment as set forth in Paragraph 36 of this section. Defendants shall pay $4,000,000 within 10 days of the Effective Date and the remaining $2,099,000 on December 4, 2014.

38.     Any funds received by the Bureau in satisfaction of this judgment shall be deposited into a fund or funds administered by the Bureau or its agent in accordance with applicable statutes and regulations to be used for redress for the Redress Class, including but not limited to refund of moneys, restitution, or other monetary relief, and for any attendant expenses for the administration of any such redress.

39.     For the purposes of Redress, Section D, the Redress Class shall include any Affected Consumer who has paid an Advance Fee to a DRSP that claimed to be exempt from the TSR pursuant to a "legal" exemption where such Advance Fee was processed by Defendants on or after October 27, 2010 through May 20, 2014.

40.     The Bureau or its agent will administer restitution of the fees paid to Global by the Redress Class, as reflected in information provided by Global to the Bureau.

41.     If the Bureau determines, in its sole discretion, that redress to any Affected Consumer in the Redress Class is wholly or partially impracticable, or if funds remain after redress is completed, the Bureau may apply any remaining funds for such other equitable relief (including consumer information remedies) as the Bureau determines to be reasonably related to the violations alleged in the Complaint. Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement. Defendants shall have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

42.     Payment of redress to any Affected Consumer under this Order shall not be conditioned on that Affected Consumer waiving any right.

**E.    Civil Money Penalty**

43.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law set forth in this in the Complaint, and taking into account the factors set

forth in 12 U.S.C. § 5565(c)(3), Defendants, jointly and severally, shall pay a civil money penalty of $1,000,000 to the Bureau, as directed by the Bureau and as set forth herein.

44.     Within 10 days of the Effective Date, Defendants shall pay the civil money penalty in the form of a wire transfer to the Bureau or to such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the Bureau.

45.     The civil money penalty paid under this Order shall be deposited in the Civil Penalty Fund of the Bureau in accordance with Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

46.     Defendants shall treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants shall not:

    a.   Claim, assert, or apply for a tax deduction, tax or tax credit, or any other tax benefit with regard to any federal, state, or local tax for any civil money penalty paid under this Order; or

    b.   Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

47.     To preserve the deterrent effect of the civil money penalty, in any Related Consumer Action, Defendants shall not argue that Defendants are entitled to, nor shall Defendants benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action, because of the civil money penalty paid in this action ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury.

Such a payment shall not be deemed an additional civil money penalty and shall not be deemed to change the amount of the civil money penalty imposed in this action.

**F.     Other Monetary Provisions**

48.     In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, shall accrue on any outstanding amounts not paid from the date of default to the date of payment, and shall immediately become due and payable.

49.     Defendants shall relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds shall be returned to Defendant.

50.     In accordance with 31 U.S.C. § 7701, Defendants, unless they already have done so, shall furnish to the Bureau their taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

51.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants shall notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification shall indicate the amount of redress, if any, that Defendants paid or are required to pay to consumers and should describe the consumers or classes of consumers to whom that redress has been or will be paid.

52.     Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the Bureau, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

**G.     Compliance Management System and Third-Party Monitor**

53.     Within 90 days of the Effective Date, Global shall develop and implement an enhanced Compliance Management System to include, but not be limited to:

a. Comprehensive written policies and procedures designed to prevent violations of the TSR, 16 C.F.R. pt. 310, 1031(a) and 1036(a) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), or other Federal consumer protection laws, and associated risks to consumers;

b. Effective due diligence processes, consistent with the injunctions provided in this Consent Order;

c. Effective training programs that include regular and specific training regarding the TSR, consumer protection laws, and associated risks to consumers;

d. Enhanced and documented compliance monitoring processes;

e. Effective consumer complaint monitoring processes;

f. Effective audit programs; and

g. Effective processes to monitor the monthly Total Return Rate for each DRSP, including but not limited to, specific processes to review and monitor DRSPs whose Total Return Rate exceeds 2.5%.

54. Within 90 days of the Effective Date, Global shall secure and retain one or more third-party monitors, not subject to any conflict of interest, and subject to a determination of non-objection by the Enforcement Director, to conduct an independent review of Global's business (the "Third-Party Monitor"). The Third-Party Monitor shall review Global's existing policies and procedures concerning the TSR and other consumer protection laws, potential risks to consumers, consumer complaint resolution processes, and employee training programs. The purposes of the review shall be to determine:

a. Whether Global has in place comprehensive written policies and procedures designed to detect violations of the TSR, related violations of consumer protection laws, and associated risks to consumers;

b. Whether Global has in place effective due diligence processes;

    c.   Whether Global has in place effective training programs that includes regular and specific training regarding the TSR, consumer protection laws, and associated risks to Consumers;

    d.   Whether Global has in place effective and documented compliance monitoring processes;

    e.   Whether Global has in place effective consumer complaint monitoring processes; and

    f.   Whether Global has in place effective audits of its compliance with the TSR, including the Advance Fee ban, or other Federal consumer financial laws applicable to Global.

55.    Within 180 days of the Effective Date, the Third-Party Monitor shall prepare a written report detailing the findings of the review (the "Third-Party Monitor Report"), and provide the Third-Party Monitor Report to Global.

56.    Within 20 days of receiving the Third-Party Monitor Report, Global shall:

    a.   Develop a plan (the "Compliance Management System") to: (i) address any deficiencies identified, and (ii) implement any recommendations or explain in writing why a particular recommendation is not being implemented; and

    Submit the Third-Party Monitor Report and the Compliance Management System to the Enforcement Director.

**H.   Additional Compliance Monitoring**

57.    Global agrees to be subject to the Bureau's supervisory authority under 12 U.S.C. § 5514 for 3 years from the Effective Date. Consistent with 12 C.F.R. § 1091.111, Global shall not petition for termination of supervision under 12 C.F.R. § 1091.113.

**I.   Reporting Requirements**

58.    Defendants shall notify the Bureau of any change that may affect compliance obligations arising under this Consent Order, including but not limited to, a

dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; the proposed filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in Defendants' names or addresses.

59.    Within 7 days of the Effective Date, Defendants shall:

    a.  Designate at least one telephone number and an email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendants;

    b.  Identify all of Defendants' businesses related to the subject matter of this Consent Order or to the offering or provision of consumer financial products or services by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

    c.  Describe the activities of each business identified in (b), including the products and services offered, the means of advertising, marketing, and sales;

    d.  For all individual Defendants identify all titles and roles in each business identified in (b), including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and

    e.  For all individual Defendants describe in detail such Defendant's involvement in each business identified in (b), including title, role, responsibilities, participation, authority, control, and any ownership.

60.    Defendants shall report any change in the information required to be submitted under Paragraphs 58 and 59 at least 30 days prior to such change. Provided, however, that with respect to any proposed change about which Defendants learn less

than 30 days prior to the date such action is to take place, Defendants shall notify the Bureau as soon as is practicable after obtaining such knowledge.

61.     Within 90 days of the Effective Date, and again one year after the Effective Date, each Defendant shall submit to the Enforcement Director an accurate written compliance progress report ("Compliance Report"), which, at a minimum:

      a.   Describes in detail the manner and form in which Defendants have complied with this Order; and

      b.   Attaches a copy of each Order Acknowledgment obtained under Section J of this Consent Order, unless previously submitted to the Bureau.

62.     After the one-year period, Defendants shall submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

**J.     Order Distribution and Acknowledgement**

63.     Within 7 days of the Effective Date, Defendants shall submit to the Enforcement Director an acknowledgment of receipt of this Consent Order, sworn under penalty of perjury.

64.     Within 30 days of the Effective Date, Defendants, for any business for which he or it is the majority owner or which he or it directly or indirectly controls shall deliver a copy of this Consent Order to each of its board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of the Consent Order.

65.     For 5 years from the Effective Date, each Defendant, for any business for which he or it is the majority owner or which he directly or indirectly controls shall deliver a copy of this Order to any business entity resulting from any change in structure as set forth in Section I, any future board members and executive officers, as well as to any managers, employees, service providers, or other agents and representatives who will

have responsibilities related to the subject matter of this Order before they assume their responsibilities.

66.     Defendants shall secure a signed and dated statement acknowledging receipt of a copy of this Order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

**K.    Recordkeeping**

67.     Defendants shall create, for at least 3 years from the Effective Date, and then retain, for at least 5 years, and make available to the Bureau upon request, the following business records:

    a.   Documents and records necessary to demonstrate full compliance with each provision of this Consent Order, including all submissions to the Bureau;

    b.   For each individual Affected Consumer: the consumer's name, address, phone number, email address; the date the Affected Consumer enrolled in Debt Relief Service; all payments and transactions related to the Affected consumer; and the date the Affected Consumer left the Debt Relief Service, if known;

    c.   For Payment Processing or Account Maintenance Services, accounting records showing the gross and net revenues generated by those services; and

    d.   All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

**L.    Notices**

68.    Unless otherwise directed by the Bureau, all submissions, requests, communications, consents, or other documents relating to this Consent Order shall be in writing and shall be sent by overnight courier (not the U.S. Postal Service), as follows:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552
> *In re* Global Client Solutions, LLC, *et al.*, File No. 2011-0113-02

Provided however, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Bureau at Enforcement_Compliance@cfpb.gov.

**M.    Cooperation with Bureau Counsel**

69.    In connection with this action, or any subsequent matter related to the conduct described in the Complaint, Defendants shall cooperate in good faith with the Bureau and appear at such places and times as the Bureau shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the Bureau. Specifically, Defendants shall assist the Bureau in determining the identity of and amount of injury suffered by each Affected Consumer.

**N.    Retention of Jurisdiction**

70.    The Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Consent Order.

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

**SO STIPULATED**:

Consumer Financial Protection Bureau

_____/s/_____8/22/2014____

Erin Mary Kelly, Enforcement Attorney       Date

Defendant, Global Client Solutions, LLC BY:

_____/s/_____8/5/2014_____

Michael Hendrix, CEO                         Date

Defendant, Global Holdings, LLC  BY:

_____/s/_____8/5/2014_____

Michael Hendrix, CEO                         Date

Defendant, Robert Merrick:

_____/s/_____8/5/2014_____

Robert Merrick                               Date

Defendant Michael Hendrix:

_____/s/_____8/5/2014_____

Michael Hendrix                              Date


    IT IS SO ORDERED.


    DATED: August 27, 2014


_____

Hon. Dean D. Pregerson

United States District Judge